## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| OSCAR OSBALDO CRUZ-CRUZ, EVELYN TEJEDA-BARCENAS, MARIA ISABEL ORTEGA-MARTINEZ | §<br>§<br>§<br>§ | |
| *Plaintiffs*, | §<br>§ | Civil Action No.  5:15-CV-00342-XR |
| v. | §<br>§ | |
| MARIA ISABEL CALYMAYOR-BARRIOS | §<br>§<br>§ | |
| *Defendant*. | §<br>§<br>§ | |

## ORDER

On this date, the Court considered Defendant's motion for summary judgment (Docket No. 51); Defendant's motion to strike (Docket No. 59); and the various responses and replies.

### I.     BACKGROUND

Plaintiffs are citizens of the Republic of Mexico.  Defendant is also a citizen of the Republic of Mexico, but resides permanently in San Antonio, Texas.  Plaintiffs allege that the Defendant secured Non-Immigrant Temporary Worker Visas to retain the Plaintiffs as domestic workers here in Texas.  Plaintiffs allege that the Defendant violated the Fair Labor Standards Act.  Further, Plaintiffs allege that the Defendant falsely imprisoned them by keeping their passports.

Cruz was employed by Defendant as a driver for her son.  He first began working for the Defendant in December 2013, he then left her employ and subsequently returned to employment at various times in 2014.

Tejeda was employed by the Defendant as a nanny.  She initially began work in 2012 in Mexico and began to work in Texas in 2014 and then again in 2015.

Ortega first began working for the Defendant as a cook in Mexico.  She worked for the Defendant in Texas in 2014 and then again in 2015.

While working for the Defendant in Texas, the Plaintiffs were provided with room and board, although the Plaintiffs raise complaints about the amount of food they received and the quality of their sleeping arrangements.

## II.      Standard of Review

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

## III.     Defendant's Motion for Summary Judgment

All three Plaintiffs allege that they worked 16-18 hours per day every day that they worked for the Defendant in Texas.  They allege that they were not paid the FLSA mandated minimum wage.  Defendant argues that their claim fails as a matter of law because they only "provide a subjective estimate of daily hours worked and the number of days worked."  In addition, Defendant argues that the Plaintiffs were paid in Mexican pesos and they have failed to establish the relevant monetary exchange rates to establish that they were not properly compensated.  Finally, Defendant argues that Plaintiffs fail as a matter of law to establish that

any violation was willful.  With regard to the false imprisonment claim, Defendant argues that Plaintiffs have failed to establish any of the elements of such a claim.

## IV.    Analysis

### A.  False Imprisonment Claim

The elements of false imprisonment are: (1) a willful detention; (2) performed without consent; and (3) without the authority of law. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). A person may falsely imprison another by acts alone or by words alone, or by both, operating on the person's will. *Wal-Mart Stores, Inc. v. Cockrell*, 61 S.W.3d 774, 777 (Tex. App. – Corpus Christi 2001, no pet.).

Plaintiffs provide no evidence of any willful detention.  They were able to leave Defendant's residence, went on errands, and otherwise their movement was not restricted.  Their general allegations of poor working conditions and verbal mistreatment by the Defendant do not constitute imprisonment as a matter of law.  Although there are vague and conflicting statements made about whether the Defendant or the Plaintiffs held the Plaintiffs' passports, it is undisputed that the Plaintiffs left and returned to Texas on multiple occasions of their own free will.  While in Texas there is no competent summary judgment evidence tendered that suggests that Plaintiffs were confined in any way.  Defendant's motion for summary judgment on this claim is granted.

### B.  FLSA Claim

Plaintiffs argue that a genuine issue of material fact exists as to the number of hours they worked and whether they were paid the minimum hourly wage mandated by the FLSA.  The FLSA extends minimum wage protection to employees who work in domestic service for one or more employers for more than eight hours in the aggregate in any workweek.  29 U.S.C. §

206(f).  Domestic service employees who work more than 40 hours in any one workweek for the same employer must also be paid overtime compensation at a rate not less than one and one-half times the their regular rate of pay for the excess hours.  29 U.S.C. § 206(l).  However, live-in domestic workers are exempt from the overtime pay requirement.  29 U.S.C. § 213(b)(21).  Domestic service includes services performed by cooks, butlers, valets, maids, housekeepers, governesses, janitors, laundresses, handymen, gardeners, family chauffeurs, and babysitters.  29 C.F.R. § 552.3.

The FLSA requires that minimum wage must be paid for all hours worked.  "Work" is broadly defined as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."  *Von Friewalde v. Boeing Aero. Operations, Inc*., 339 F. App'x. 448, 453 n.3 (5th Cir.  2009) (*quoting BP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2006)).[1]

In this case all parties agree that the FLSA and the work visas required that Plaintiffs be paid at least $7.25 per hour.[2]  At least one of the Plaintiffs appears to have signed an employment agreement.  What weight should be afforded that document is problematic for the Defendant.  Tejada's agreement states that her regular work hours would be 8:00 a.m. to 5:00 p.m. Monday

---

[1] This issue is highly contested in this case.  Defendant appears to take the position that although her employees were taken on trips to assist to care for her children, some or all of the hours were not compensable.  In addition, Defendant appears to argue that trips the employees took on outings with the children (SeaWorld, basketball games, etc.) were not compensable time.  The Plaintiffs argue that during these outings they were babysitting the children and accordingly these were hours worked.

[2] Defendant's Depo at pp. 8-9.  Vague references are made to the type of visa granted to the Plaintiffs.  The Court assumes that the Plaintiffs received a visa for domestic employee (B-1).  These visas generally require the following:  A description of the work duties of the employee; The number of hours to be worked by the employee per week; The rate of pay; The regular day(s) off each week; The frequency and form of payment; Any money deducted for food or lodging; That the employer will not withhold the employee's passport, employment contract, or other personal property, nor prohibit the employee from leaving the premises when the employee is not on duty; That the employer will pay the domestic employee's travel expenses to and from the United States: and both parties understand that the employee cannot be required to remain on the premises after working hours without compensation. *See* https://travel.state.gov/content/dam/visas/LegalRightsandProtections/Wilberforce%20Pamphlet%20English%20Online%20Reading%20Version%2012-22-2014.pdf

through Friday.[3]  The time logs submitted by the Defendant, which she characterizes as estimates and not precise, do not reflect these contractual hours.  Defendant appears to also imply that she should be receiving credit for the food and lodging she provided to these employees, but the written agreement of Ortega's states that room and board and food and airplane tickets may not be deducted from the employee's salary.[4]

Even without a written or verbal agreement, all time spent on the employer's premises is not considered hours worked.  If the employee has no duties and may leave the premises for his own purpose, the free time is not considered hours worked.  *See* 29 C.F.R. § 785.23.

Genuine issues of material fact exist as to the number of hours worked by the Plaintiffs, and whether given the hours worked they were paid the minimum wage of $7.25 per hour.

The Defendant did not maintain accurate payroll records.  In cases where an employer has kept inaccurate or incomplete payroll records, an employee establishes a prima facie case under the FLSA "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).  Employees are not required to maintain complete, wholly trustworthy documentation.  *Id*.

Plaintiffs have not merely provided their subjective belief about the number of hours worked; they have proffered their own sworn testimony, and they have provided an affidavit from an uninterested third party who declares that he had seen previous employees of the

---

[3] *See* Contrato de Empleo at Docket No. 59-2, page 20 of 45.
[4] Ortega Depo at pp. 46-47.

Defendant working very long hours every day at the Defendant's residence.[5]   In addition, the testimony is uncontested that the Defendant continued to pay the Plaintiffs the same wages in pesos they were receiving while employed by her in Mexico, producing a "just and reasonable inference" that mandates that Defendant's summary judgment be denied.[6]

**Cruz**

Cruz initially began working for the Defendant in Mexico.   He testified that while in Mexico he began work at 9 a.m. and he would work between 12 to 16-hour shifts.[7]   He asserts that when he left Mexico for the United States, there was no discussion with the Defendant regarding the number of hours he would be working.[8]   Cruz asserts that he was paid 6,000 pesos every 15 days when he was in the United States.

Cruz argues that he worked as a driver every day for the Defendant in the United States from December 17, 2013 through December 31, 2013; February 26, 2014 through June 15, 2014;[9] August 24, 2014 through October 23, 2014; November 21, 2014 through December 22, 2014.[10]   He asserts that he worked every day or was on-call from 6:00 a.m. until 11:00 p.m. or midnight.[11]

---

[5] *See* Declaration of Jose Rubio (He transported another of Defendant's employee's taking her to the residence at 7:00 a.m. and picking her up at 9:00 p.m. every day, seven days per week; he was continuously inside the Defendant's residence and would see all three Plaintiffs working "all day and all night.").

[6] Defendant's reliance upon *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir.  2005) is misplaced. In that case the Fifth Circuit held that the plaintiff's claim that she was required to turn in false time sheets was unsubstantiated and she presented no evidence that her employer was aware that she was working overtime hours without compensation.

[7] Cruz Depo at pp. 29-30.

[8] Cruz Depo at pp. 41-42.

[9] Cruz Depo at pp. 53-57.

[10] Cruz Depo at pp. 57-58, 80.

[11] Cruz Depo at p. 81

Defendant acknowledges that while in the United States she paid Cruz 6,000 pesos every 15 days. She argues that in addition she gave him $200 in gift cards every two weeks.[12] She also argues that she provided him paid vacation when Cruz returned to Mexico, that she gave him an end of the year bonus, and that at the end of calendar year 2014, Cruz signed an acknowledgement that he had received all wages that he was entitled to receive.[13] She also argues that she maintained time logs for the hours worked which establishes, as a matter of law, that Cruz was paid the minimum wage.[14]

**Tejeda**

Tejeda began working for the Defendant in Mexico in 2012.[15] Initially in Mexico she worked for the Defendant for 24 hours a day and off the second day. Later she worked for two days on and two days off.[16] In 2013, she was paid 1,400 pesos every 24 hours worked.[17]

Tejeda alleges that she worked every day for the Defendant in San Antonio from August 24, 2014 through November 6, 2014.[18] She was paid 1,400 pesos per day or 9,800 pesos per

---

[12] Cruz disputes that these cards were part of his wages. He argues that these cards were used in part to pay for taxi fares and meals at the airport. Cruz Depo at p. 36. In addition, he argues that he was forced to sign the acknowledgement form in Mexico because he was not going to be given his Mexican Christmas bonus monies if he did not sign. Crus Depo at p. 100. The record is also very unclear how many American Express gift cards the Defendant actually purchased for her employees. The Defendant appears to argue that she does not have access to the American Express account records that are in the possession of her father in-law, even though her husband receives the statements. Defendant's Depo at pp. 51-52. The record is also unclear about the amounts that were given. At times reference is made that cards in the amount of $200 were given to the employees every two weeks. Other times Defendant claims that she gave the employees cards in the amount of $250 every two weeks. Defendant's Depo at p. 98.

[13] Cruz argues that according to Mexican law, Mexican employers are required to pay employees a Christmas bonus that is the equivalent of two weeks of wages earned in Mexico. Cruz argues that this year-end bonus was not payment for wages earned in the United States.

[14] Despite counsel for Defendant's representations, the record is very clear that on numerous occasions the Defendant acknowledges that her time logs are merely estimates, and that she kept these documents merely for the purpose of complying with the work visa requirements, and that she never thought she was going to have to rely upon them. See Defendant's Depo at pp. 35, 59, 64, and 71.

[15] Tejeda Depo at p. 10.

[16] Tejeda Depo at p. 16.

[17] Tejeda Depo at p. 19.

[18] Tejeda Depo at p. 52.

week.[19]  She again worked for the Defendant from January 16, 2015 through March 5, 2015.[20]

She asserts that she worked every day from 6:00 a.m. until 11:00 p.m. or midnight.[21]

Defendant acknowledges that Tejeda was paid 1,400 pesos every day in San Antonio

irrespective of the hours worked.[22]  Defendant argues, however, that given the number of hours

the children were taking a nap or watching a cartoon, that was fair compensation.[23]  She argues

that when Tejeda first arrived to San Antonio, she gave her gift cards as an "incentive/extra."

She also states that on three occasions she advanced wages to Tejeda (and implies that she is still

owed money from Tejeda).

**Ortega**

Ortega began working for the Defendant as a cook on March 1, 2014 in Mexico.[24]  She

was paid 4,000 pesos every two weeks.  She worked in the United States from September 26,

2014 through December 25, 2014 and January 26, 2015 through March 18, 2015.[25]  Ortega

claims that she worked 16-18 hours every day while working as a cook and housekeeper in the

United States.  While in the United States she continued to receive the same 4,000 pesos every

two weeks.[26]

Defendant argues that "like the other two Plaintiffs, Ortega would also receive $250 in

gift cards every two weeks."

### C. Willful Violation Claim

---

[19] Tejeda Depo at p. 58.
[20] Tejeda Depo at p. 111.
[21] Tejeda Depo at p. 131.
[22] Defendant's Depo at p. 75.
[23] Defendant's Depo at pp. 74-75.
[24] Ortega Depo at pp. 17, 19.
[25] Defendant's Depo at p. 99.
[26] Ortega Depo at p. 103.

To prove a willful violation of the FLSA, a plaintiff must establish that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988) (*citing Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 (1985)); *see also Ramos v. Al-Bataineh*, 599 F. App'x 548, 551 (5th Cir. 2015).

Genuine disputes of material fact exist for the issue of willfulness. *See Mohammadi v. Nwabuisi*, 605 F. App'x 329, 333 (5th Cir.  2015).  The Defendant was aware that she was required to pay her employees a minimum wage of $7.25 per hour.  Despite that knowledge she continued to pay them the same amount of pesos she was paying them in Mexico.  As indicated above, genuine issues of material fact exist as to how many hours the Plaintiffs worked.

### Conclusion

Genuine issues of material fact exist as to the number of hours worked by the Plaintiffs, whether given the hours worked they were paid the minimum wage of $7.25 per hour, and whether any violation was willful.  Defendant's motion to strike Plaintiffs' Response is denied (Docket No. 59).[27]  For the reasons stated above, Defendant's motion for summary judgment (Docket No. 51) is denied.

 SIGNED this 5th day of April, 2016.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[27] Defendant argues that Plaintiffs' Declarations attached to their response are "riddled with conclusory statements, speculative opinions, inadmissible hearsay, and legal conclusions."  The Court disagrees with most of these objections.  Contrary to Defendant's assertion, most of the declarations do not contradict the previous sworn deposition testimony.  To the extent that the Plaintiffs have tendered new documentation not previously provided in discovery, the Court has not considered those documents in ruling on Defendant's motion.